## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ELIZABETH DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. CIV-19-00561-PRW |
| | ) | |
| | ) | |
| MERCY REHABILITATION | ) | |
| HOSPITAL, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER</u>

Before the Court is Defendant's Motion for Summary Judgment (Dkt. 28). Plaintiff has responded in opposition (Dkt. 34), and Defendant replied (Dkt. 36). For the reasons stated below, the motion is **DENIED**.

### *Background*

Plaintiff, Elizabeth Davis, is a former employee of Defendant, Mercy Rehabilitation Hospital, and asserts claims arising out of the termination of her employment. She was hired by Defendant on July 16, 2018 as a licensed practical nurse for the day shift. Because Defendant is a hospital operated in partnership with Kindred Healthcare, Plaintiff worked for and alongside both Mercy employees and Kindred employees during her employment.

In orientation and training, Plaintiff alleges that she was subjected to sexual harassment by a Kindred employee, David Miller, who was Plaintiff's supervisor at the time. Plaintiff filed a complaint with human resources but contends that no corrective actions were ever taken.

1

Plaintiff claims that not long after, on or about August 27, 2018, Defendant's Chief Operations Officer ("COO") told her that she was not a good fit for the day shift. The COO and nurse manager then changed Plaintiff to the night shift. The next day, Plaintiff emailed the Defendant's Chief Executive Officer ("CEO"), expressing concern that she was being harassed and discriminated against by her supervisors.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 16, 2018. The next day, Plaintiff received a written warning for complaints from patients made a month prior, on September 25 and 27, 2018. On November 27, 2018, a nurse submitted a written complaint about Plaintiff raising thirteen performance issues. Subsequently, Plaintiff was placed on administrative leave. She was ultimately terminated the first week of December 2018.

Plaintiff was issued a right to sue letter by the EEOC on February 19, 2019 and initiated this action shortly thereafter. She alleges that her termination was the result of unlawful retaliation by Defendant in violation of Title VII for her participation in the sexual harassment investigation involving her supervisor. On August 7, 2020, Defendant filed a Motion for Summary Judgment (Dkt. 28), alleging the undisputed material facts entitle it to judgment as a matter of law. Plaintiff disagrees.

### *Standard of Review*

Fed. R. Civ. P. 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding whether summary judgment is proper, the court does not weigh the evidence and determine the truth of the matter asserted, but

determines only whether there is a genuine dispute for trial before the fact-finder.[1] The movant bears the initial burden of demonstrating the absence of a genuine, material dispute and an entitlement to judgment.[2] A fact is "material" if, under the substantive law, it is essential to the proper disposition of the claim.[3] A dispute is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.[4]

If the movant carries the initial burden, the nonmovant must then assert that a material fact is genuinely in dispute and must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; by "showing that the materials cited [in the movant's motion] do not establish the absence . . . of a genuine dispute"; or by "showing . . . that an adverse party [i.e., the movant] cannot produce admissible evidence to support the fact."[5] The nonmovant does not meet its burden by "simply show[ing] there is some metaphysical doubt as to the material facts,"[6] or by

---

[1] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015).

[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[3] *Anderson*, 477 U.S. at 248; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[4] *Id.*

[5] Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp.*, 477 U.S. 317; *Beard v. Banks*, 548 U.S. 521, 529 (2006).

[6] *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (alteration in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995)).

theorizing a "plausible scenario" in support of its claims.[7] "Rather, 'the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"[8] If there is a genuine dispute as to some material fact, the district court must consider the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party.[9]

Furthermore, the Supreme Court explains:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.[10]

---

[7] *Scott v. Harris*, 550 U.S. 372, 380 (2007).

[8] *Neustrom*, 156 F.3d at 1066 (quoting *Anderson*, 477 U.S. at 251–52; *Bingaman v. Kan. City Power & Light Co.*, 1 F.3d 976, 980 (10th Cir. 1993)).

[9] *Scott*, 550 U.S. at 380; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Sylvia v. Wisler*, 875 F.3d 1307, 1328 (10th Cir. 2017).

[10] *Celotex Corp.*, 477 U.S. at 322–23; *see Braxton v. Nortek Air Sols., LLC*, 769 F. App'x 600, 603 (10th Cir. 2019) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)) ("[I]f the movant will not bear the burden of persuasion at trial, it can meet this initial burden 'simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.' It 'need not negate the nonmovant's claim.'").

*Discussion*

Defendant seeks summary judgment in its favor on Plaintiff's Title VII claim of retaliation for two reasons. First, Defendant argues that Plaintiff has failed to establish her prima facie case. Second, Defendant argues that the undisputed facts demonstrate that it presented a legitimate, non-retaliatory reason for terminating Plaintiff, and that Plaintiff adduces no evidence suggesting Defendant's proffered reason is pretextual.

However, as to her prima facie case for retaliation, Plaintiff *has* presented evidence sufficient to survive summary judgment. And although Defendant sufficiently articulates a legitimate reason for terminating Plaintiff, the Court finds that she has established a genuine issue of material fact as to pretext and therefore denies summary judgment for the reasons set forth more fully below.

Title VII makes it "an unlawful employment practice for an employer to discriminate against any of [its] employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."[11] Because there is no direct evidence of retaliation, the *McDonnell Douglas* burden-shifting framework applies.[12] That framework requires Plaintiff to first establish a prima facie case of retaliation. To do so, Plaintiff must show that (1) she engaged in protected activity under Title VII, (2) Defendant took an adverse

---

[11] 42 U.S.C. § 2000e—3(a).

[12] *Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004).

employment action against her,[13] and (3) a causal connection exists between the protected activity and the adverse action.[14] Should Plaintiff establish a prima facie case for retaliation, the burden then shifts to Defendant to "articulate a legitimate, nondiscriminatory reason for the adverse employment action."[15] If Defendant articulates a legitimate reason for the action, the burden shifts back to Plaintiff, who must demonstrate that Defendant's asserted reasons are pretextual.[16]

Here, Plaintiff has established the first element of her case as she engaged in protected activity on October 16, 2018, upon filing a charge with the EEOC. Next, Plaintiff indicates that she was terminated a month and a half later in December 2018. This allegation plausibly establishes the second element, as "any reasonable employee would have found termination materially adverse."[17]

Plaintiff likewise sets forth evidence sufficient to survive summary judgment on the causation prong of her prima facie case. To establish causation, a plaintiff must come forward with evidence that justifies an inference of retaliatory motive, "such as protected

---

[13] *See Braxton*, 769 F. App'x at 605–06 ("For a retaliation claim under Title VII, an adverse employment action is something that would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'") (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)).

[14] *Stover*, 382 F.3d at 1071.

[15] *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1229 (10th Cir. 2004).

[16] *Id.*

[17] *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006)

conduct closely followed by adverse action."[18] Lacking evidence of a "very close" temporal connection between the employee's protected conduct and adverse action, a plaintiff must present additional evidence to establish causation.[19]

In this case, the evidence shows that Plaintiff's employment was terminated approximately one and a half months after she filed an EEOC charge and that Defendant was aware of the charge when Plaintiff was terminated.[20] Defendant contends that the gap between the protected activity and the retaliatory conduct is too long to imply a causal link. The Tenth Circuit, however, has found that periods of one and one-half months may, by itself, establish causation.[21] And given the low burden of establishing causation for

---

[18] *Proctor v. U.P.S.*, 502 F.3d 1200, 1208 (10th Cir. 2007).

[19] *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999); *see also Piercy v. Maketa*, 480 F.3d 1192, 1198–99 (10th Cir. 2007).

[20] It is undisputed that Defendant was aware of Plaintiff's October 16, 2021 EEOC charge by at least November 5th, 2021—one month before Plaintiff's termination. *See* Def. Mercy's Reply to Pl. Elizabeth Davis' Resp. in Opp'n to Def. Mercy's Mot. for Summ. J. & Br. in Supp. (Dkt. 36) at 9. To the extent Defendant challenges knowledge before that point, Plaintiff presents sufficient evidence to create a dispute of material fact on this point, which therefore supports a defeat of summary judgment. For instance, Defendant's nurse manager and COO, key individuals involved in Plaintiff's alleged mistreatment, were identified by name in the EEOC charges, which also detail Plaintiff's alleged discrimination prior to being fired in December 2018. Further, Plaintiff alleges that Mercy knew Plaintiff was considering filing an EEOC complaint as early as August 2018. *See* Pl. Elizabeth Davis' Resp. in Opp'n to Def. Mercy's Mot. for Summ. J. with Br. in Supp. (Dkt. 34) at 13; Pl. Elizabeth Davis' Dep. Tr. (Dkt. 34, Ex. 2) at 64:3-5. She informed Defendant's CEO of the same via email on August 29, 2019. *See* Pl. Elizabeth Davis' Employee File (Dkt. 34, Ex. 1) at 6.

[21] *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1191 (10th Cir. 2016) (one and one-half month period between engagement in protected activity and adverse employment action may establish causation for ADA retaliation claim) (quoting *Anderson v. Coors Brewing Co*., 181 F.3d 1171, 1179 (10th Cir. 1999)); *O'Neal v. Ferguson Constr. Co.*, 237

purposes of proving a prima facie case,[22] the close temporal proximity alone may be sufficient.[23] Moreover, the day after filing the charge, Plaintiff received a written warning for complaints from patients that occurred a month prior, on September 25th and 27th, 2018, and was placed on administrative leave. This evidence, together with the timing of Plaintiff's termination, plausibly establishes that a causal connection exists.

The burden accordingly shifts to Defendant to demonstrate a legitimate, nonretaliatory reason for its termination decision. Defendant asserts that it fired Plaintiff due to patient safety concerns and poor job performance and failure to maintain adequate job-related skills—a legitimate, nonretaliatory reason for terminating Plaintiff's employment.[24] Defendant has thus satisfied its burden in this respect.

The burden thus shifts back to Plaintiff. In order to prevail on her retaliation claim, Plaintiff must proceed to show that there is a genuine dispute of material fact as to whether the Defendant's proffered reasons for terminating her are "pretextual—i.e. unworthy of

---

F.3d 1248, 1253 (10th Cir. 2001) (noting that a one-and-a-half month time period between the protected activity and the adverse action may be enough to establish causation on retaliation claims, but that a period of three months, without additional evidence, has been found insufficient to do so).

[22] *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008).

[23] *Bragg v. Off. of the Dist. Atty., Thirteenth Jud. Dist.*, 704 F. Supp. 2d 1032, 1052–53 (D. Colo. 2009) (declining to grant summary judgment where retaliatory conduct came less than two months after the plaintiff filed her complaint).

[24] *See Metzler*, 464 F.3d at 1172 (stating that poor job performance is a legitimate, nonretaliatory reason for termination).

belief."[25] The pretext inquiry "is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [it] honestly believed those reasons and acted in good faith upon those beliefs."[26] "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."[27]

To establish pretext, Plaintiff primarily relies on four pieces of circumstantial evidence: (1) the "very close" temporal proximity between her October 16, 2018 complaint to the EEOC office and her termination a month and half later; (2) the differences between the sexual harassment investigation of her supervisor and the investigation of complaints lodged at Plaintiff; (3) the timing and severity of the corrective actions to which Plaintiff was subjected; and (4) the alleged bias of Defendant's COO against Plaintiff.

Viewing all the facts and inferences in the light most favorable to Plaintiff, the Court finds that a genuine issue of material fact remains as to whether Defendant's proffered reasons for terminating Plaintiff are pretextual. This, however, is a close call. While some of the facts cited by Plaintiff would not lead a reasonable jury to infer pretext, others do, and there are enough to create a triable issue of fact for the jury.

---

[25] *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).

[26] *Rivera v. City & Cty. of Denver*, 365 F.3d 912, 924–25 (10th Cir. 2004).

[27] *Morgan*, 108 F.3d at 1323 (citations omitted).

Indeed, some of Plaintiff's proffered evidence of pretext fails to establish any indication that Defendant's motivation for her termination was anything other than safety and performance related. For instance, Plaintiff attempts to show pretext with evidence that she was treated differently from another employee, David Miller, her former supervisor. Specifically, Plaintiff notes that unlike her, Mr. Miller was not subjected to any adverse action or termination as result of an investigation. Defendant instead recommended verbal coaching. Plaintiff also contends that their investigations substantively differed, in that Plaintiff's was "thorough," while Mr. Miller's was limited in number of respects. In listing the shortcomings of Mr. Miller's investigation, Plaintiff presents evidence of forms not completed and internal procedures not followed.[28] And while all of this may or may not be true, Plaintiff fails to explain how this leads to an inference that her termination was pretextual, as she does not allege any facts to indicate that she and Mr. Miller were similarly situated.[29]

"Individuals are considered 'similarly-situated' when they deal with the same supervisor, are subjected to the same standards governing performance evaluation and

---

[28] Pl. Elizabeth Davis' Resp. in Opp'n to Def. Mercy's Mot. for Summ. J. with Br. in Supp. (Dkt. 34) at 8; *see* Susan McGinley's Dep. Tr. (Dkt. 34, Ex. 4) at 144:11-12.

[29] A plaintiff wishing to show pretext with evidence that her employer treated her differently from other workers bears the burden of showing that the employees were similarly situated, otherwise the comparison is not legally relevant. *See Watts v. City of Norman*, 270 F.3d 1288, 1293 (10th Cir. 2001); *see also Salguero v. City of Clovis*, 366 F.3d 1168, 1177 (10th Cir. 2004) (affirming district court's decision granting summary judgment and holding that allegations of disparate discipline were insufficient to show pretext because courts "afford substantial latitude to employers in making discipline related decisions," and there were "significant differences in conduct" among employees).

discipline, and have engaged in conduct of comparable seriousness."[30] Here, the evidence shows that Mr. Miller was Plaintiff's supervisor and was a Kindred employee rather than a Mercy employee, subject to a different set of corporate policies. He was also facing allegations of materially different misconduct, and Plaintiff's safety and performance-related investigation and his sexual harassment investigation involved different rules allegedly violated. Thus, despite making all inferences in Plaintiff's favor, no factfinder could reasonably view them as similarly-situated employees. This comparison therefore fails to create a genuine issue of fact as to pretext.

But some of Plaintiff's other evidence, taken together, does establish a genuine dispute of material fact as to pretext. For example, when Plaintiff was raising concerns about the alleged sexual harassment by her supervisor, Plaintiff maintains that Defendant's COO purportedly began treating Plaintiff "very differently."[31] The record suggests that over the course of the next few weeks, the COO began to tell others, who were directly involved in terminating Plaintiff, that she "doesn't think [Plaintiff] is a good fit for [their] facility."[32] And then on August 27, 2018, Plaintiff asserts that the COO likewise told her

---

[30] *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 801 (10th Cir. 2007) (citations omitted); *Juarez v. Utah*, 263 F. App'x 726, 738 (10th Cir. 2008).

[31] Pl. Elizabeth Davis' Resp. in Opp'n to Def. Mercy's Mot. for Summ. J. with Br. in Supp. (Dkt. 34) at 9.

[32] August 17, 2018 emails between Kindred's HR Director and Mercy's HR Manager (Dkt. 36, Ex. 4) at 1; August 17, 2018 emails between Kindred's HR Director and Mercy's HR Manager (Dkt. 34, Ex. 4).

that she was not a good fit and moved her to the night shift.[33] The record indicates that at that point, Plaintiff had worked at Mercy for a month, was still in her introductory period, and had received no previous warnings.[34] Viewing the evidence in Plaintiff's favor, a reasonable jury could infer that the COO, who oversaw the subsequent investigations that led to Plaintiff's termination, may have formed a negative view toward Plaintiff because of her complaints about harassment, and it was that negative view that led to her termination, rather than any actual performance deficiencies.

Defendant maintains that all corrective actions taken were solely for performance reasons, but never explains how, for example, moving Plaintiff to the night shift was corrective rather than punitive. Plaintiff argues that a reasonable inference of pretext can be drawn from the immediate severity of corrective actions taken and the lack of training. She cites an email thread in which Mercy's HR Manager recommends a "coaching conversation" with Plaintiff as a possible first step but this was not ultimately pursued.[35] Since Plaintiff was not coached as recommended but instead promptly moved to the night shift only to then be terminated shortly thereafter, a jury could reasonably infer Defendant's proffered reasons as pretext.

---

[33] Pl. Elizabeth Davis' Resp. in Opp'n to Def. Mercy's Mot. for Summ. J. with Br. in Supp. (Dkt. 34) at 9.

[34] *See* Pl. Elizabeth Davis' Employee File (Dkt. 34, Ex. 1) at 4.

[35] *See* August 17, 2018 emails between Kindred's HR Director and Mercy's HR Manager (Dkt. 34, Ex. 4).

This point is enhanced by the fact that on October 17th, 2018—one day after Plaintiff filed a charge of discrimination with the EEOC—Plaintiff received a written warning for complaints from patients that occurred nearly a month beforehand, on September 25th and 27th, 2018. As result, Plaintiff was placed on administrative leave. A jury could infer that the substantial delay from the patient complaints, and the suspension the day after Plaintiff filed her EEOC charge, indicate that Plaintiff's termination was for reasons other than those given by her employer.

Thus, when viewing all facts and inferences in the light most favorable to Plaintiff, the Court finds that Plaintiff presented enough evidence to establish a genuine dispute of material fact as to pretext. Accordingly, summary judgment is denied.

### Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's Motion for Summary Judgment (Dkt. 28).

**IT IS SO ORDERED** this 29th day of July 2021.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE